IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br>1101 K Street, N.W., Suite 201<br>Washington, D.C. 20005<br><br>             Plaintiff,<br><br>      v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY,**<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528<br><br>**U.S. DEPARTMENT OF THE INTERIOR,**<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br><br>             Defendants. | Civil Action No. |

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") challenges the failure of the U.S. Secret Service, a component of the U.S. Department of Homeland Security ("DHS"), and the National Park Service, a component of the U.S. Department of the Interior ("Interior"), to respond to requests for documents related to President Donald Trump's trip to St. John's Church in Washington, D.C., on June 1, 2020, and documents related to the policies of the Secret Service and the U.S. Park Police concerning the treatment of peaceful protestors.

2. This case seeks declaratory relief that DHS and Interior are in violation of the FOIA, specifically, 5 U.S.C. § 552(a)(3)(A), for failing to provide CREW all responsive records and 5 U.S.C. § 552(a)(6)(A), for failing to provide CREW with a determination on its requests within 20 business days, as well as injunctive relief ordering defendants DHS and Interior to process and release to CREW immediately the requested records in their entirety.

**Jurisdiction and Venue**

3. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue in this district is proper under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4. Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring the integrity of government officials and agencies. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under the FOIA. Additionally, CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions.

5. Defendant DHS is an agency within the meaning of 5 U.S.C. §§ 552(f)(1) and 701(b)(1). DHS and its component the Secret Service have possession and control of the requested records and are responsible for fulfilling plaintiff's FOIA request.

6. Defendant Interior is an agency within the meaning of 5 U.S.C. §§ 552(f)(1) and 701(b)(1). Interior and its component the National Park Service have possession and control of the requested records and are responsible for fulfilling plaintiff's FOIA request.

## Statutory and Regulatory Background

7. The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

8. An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

9. An agency's failure to make this determination within 20 business days is subject to judicial review without exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

10. In "unusual circumstances" an agency may extend the time to respond to a request by no more than 10 working days provided that the agency gives the requester written notice setting forth the unusual circumstances and the date on which the agency expects to make a determination. 5 U.S.C. § 552(a)(6)(B)(i)-(iii). The FOIA defines "unusual circumstances" as including the need to search for and collect responsive records from offices other than the office processing the request; the need to search for, collect, and examine a "voluminous amount of separate and distinct records"; and the need to consult with another agency. 5 U.S.C. § 552(a)(6)(B)(iii)(I)–(III).

## Factual Background

11. On May 25, 2020, a white policeman killed George Floyd, an unarmed black man, by kneeling on his neck. His action incited protests and looting in Minneapolis, where the

death occurred. Then-President Donald Trump responded in predictable fashion, tweeting a threat to shoot the protesters with the words "when the looting starts, the shooting starts," and escalating the growing crisis in Minneapolis. Maggie Haberman and Alexander Burns, Trump's Looting and 'Shooting' Remarks Escalate Crisis in Minneapolis, *New York Times*, May 29, 2020, https://www.nytimes.com/2020/05/29/us/politics/trump-looting-shooting.html. President Trump also threatened to send in the National Guard to "get the job done right." *Id.*

12. By the end of the week the protests had spread to other cities, including Washington, D.C., with protesters demanding racial justice. Giovanni Russonello, The Nation Seethes, and Trump's Response Follows a Pattern, *New York Times*, June 1, 2020, https://www.nytimes.com2020/06/01/us/policits/floyd-protests-trump-biden.html . On Sunday, May 31, President Trump announced on Twitter that he was going to designate antifa as a terrorist organization, further fanning the flames of dissent. *Id.*

13. That weekend in Washington, D.C., several thousand peaceful protesters marched to Lafayette Square, situated directly across from the White House. Nat O'Connell and Siven Watt, The Early Edition: June 1, 2020, *Just Security*, June 1, 2020, https://www.justsecurity.org/70505/the-early-edition-june-1-2020/. Violence erupted, however, when the police pushed the demonstrators out of Lafayette Square and into the streets of Washington. *Id.* President Trump, for his part, warned that the Secret Service would greet any violent protests outside the White House with "the most vicious dogs, and most ominous weapons." *Id.*

14. On the evening of June 1, 2020, President Trump announced in an address from the White House Rose Garden that he was prepared to deploy the United States military in order to end what he characterized as "the riots and lawlessness that has spread throughout our country." Statement of the President, June 1, 2020, https://www.cnn.com/2020/06/01/politics/

read-trumps-rose-garden-remarks/index.html. He further stated that he was "taking swift and decisive action to protect our great capital, Washington, D.C." and "put[] everybody on warning" that the city's "[seven o'clock] curfew will be strictly enforced." *Id.*

15. On that date, protesters had once again peacefully assembled in Lafayette Square to protest the killing of George Floyd. Ashley Parker, Josh Dawsey, and Rebecca Tan, Inside the push to tear-gas protesters ahead of a Trump photo op, *Washington Post*, June 1, 2020, https://www.washingtonpost.com/politics/inside-the-push-to-tear-gas-protesters-ahead-of-a-trump-photo-op/2020/06/01/4b0f7b50-a46c-11ea-bb20-ebf0921f3bbd_story.html. In an apparent effort to show his control of the situation, President Trump planned to visit St. John's Episcopal Church, located inside Lafayette Square, directly following his address to the nation. *Id.*

16. Shortly before the President's planned remarks and just after Attorney General William Barr visited the scene at Lafayette Square, members of the National Guard began charging down the street pushing the protestors out of Lafayette Square. *Id.* Law enforcement authorities on the scene included the Secret Service, the U.S. Park Police, and the National Guard. Peter Hermann, and Fenit Nirappil, District's mayor, police chief struggle to allow protesters to be heard while quelling mayhem, Washington Post, June 1, 2020, https://www.washingtonpost.com/local/dc-politics/bowser-newsham-defend-police-response-on-second-night-of-protests-mayhem/2020/06/01/6df6db90-a3fe-11ea-bb20-ebf0921f3bbd_story.html. They "fired flash-bang shells, gas, and rubber bullets into the crowd, clearing a path for Trump to visit the church immediately after his remarks." Parker, Dawsey, and Tan, *Washington Post*, June 1, 2020.

17. The White House quickly turned footage of the violent removal of protesters for the apparent purpose of allowing President Trump to pose in front of the historic church into

5

what has been described as both a propaganda video and a campaign ad. *See* The White House 45 Archived (@WhiteHouse45), Twitter, June 2, 2020, https://twitter.com/WhiteHouse45/status/1267676026391404544; Michael McFaul (@McFaul), Twitter, June 2, 2020, https://twitter.com/McFaul/status/1267688858075856896. The actions of the President and those acting on his behalf sparked criticism across the political spectrum. "Tear-gassing peaceful protestors without provocation just so that the President could pose for photos outside a church dishonors every value that faith teaches us," House Speaker Nancy Pelosi (D-CA) and Senate Democratic Leader Chuck Schumer (D-NY) said in a joint statement. Press Release, Pelosi, Schumer Joint Statement on Trump Press Conference & Photo Op, June 1, 2020, https://www.speaker.gov/newsroom/6120-1. "If your question is, should you use tear gas to clear a path so the president can go have a photo-op, the answer is no," Sen. Tim Scott (R-SC) told *Politico*. Max Cohen, Tim Scott: Lafayette Square should not have been cleared for Trump, *Politico*, June 2, 2020, https://www.politico.com/news/2020/06/02/tim-scott-lafayette-square-trump-296238.

18.    While the White House would not tell reporters who gave the order to aggressively clear the park, Justice Department officials claimed the next day that Attorney General Barr personally ordered law enforcement to extend the perimeter around Lafayette Park soon before President Trump spoke, and that he gave the order "regardless of any plans of the president." Alex Ward, The White House's explanation for a tear gas attack on peaceful protesters doesn't add up, *Vox*, June 1, 2020, https://www.vox.com/2020/6/1/21277611/white-house-tear-gas-attack-trump-george-floyd. *See also* Carol D. Leonnig, Matt Zapotosky, Josh Dawsey, and Rebecca Tan, Barr personally ordered removal of protesters near White House, leading to use of force against largely peaceful crowd, *Washington Post*, June 2, 2020, https://www.washingtonpost.com/politics/barr-personally-ordered-removal-of-protesters-near-

white-house-leading-to-use-of-force-against-largely-peaceful-crowd/2020/06/02/0ca2417c-a4d5-11ea-b473-04905b1af82b_story.html.

19. In the months following this event, the image of President Trump awkwardly holding a bible in front of the boarded up façade of St. John's Church has become iconic, symbolizing the lawlessness, divisiveness, and hypocrisy of a man who used a religious prop and military leaders in an effort to convey strength, all the while signaling an innate weakness. *See, e.g.*, John Ward, St. John's Church photo may be a lasting image for Trump, but not in the way he intended, *Yahoo!News*, June 12, 2020, https://news.yahoo.com/st-johns-church-photo-may-be-a-lasting-image-for-trump-but-not-in-the-way-he-intended-161814297.html.

*The Secret Service FOIA Request*

20. By letter dated June 3, 2020, and submitted by email on that date, CREW made a FOIA request to the United States Secret Service seeking two categories of information. Specifically, CREW requested: (1) all documents or communications regarding President Donald Trump's trip to St. John's Church on June 1, 2020; and (2) all documents related to the policies of the Secret Service governing the treatment of peaceful protesters.

21. CREW sought a waiver of fees associated with processing its request. In support of its request for a fee waiver CREW explained that the requested records will help clarify the chain of events and whether law enforcement officials, including Secret Service agents, were ordered to violently disperse Americans exercising their First Amendment rights for the President's publicity purposes. The records will also shed light on the Secret Service's policies for engaging with peaceful protesters and whether the actions in Lafayette Park are consistent with those policies.

22. CREW further explained that it is a non-profit organization committed to protecting the public's right to be aware of the activities of government officials, to ensuring the integrity of those officials, and to highlighting and working to reduce the influence of money in politics. CREW noted its intent to analyze the information response to its request and share its analysis with the public, and that the release of the information is in not in CREW's financial interest.

23. CREW further requested that it not be charged search or review fees because it qualifies as a member of the news media. CREW explained the ways that it routinely and systematically disseminates information to the public.

24. By letter dated June 4, 2020, the Secret Service acknowledged receiving CREW's request, indicated it was holding CREW's request for a fee waiver in abeyance, and advised CREW that because its request "will require thorough and wide-ranging search," the Secret Service was invoking a 10-day extension.

25. By letter dated July 8, 2020, the Secret Service advised CREW that it had conducted a reasonable search for all potentially responsive documents, and that it was processing those records "as expeditiously as possible."

26. To date, plaintiff CREW has received no further response from the Secret Service.

27. Under 5 U.S.C. § 552(a)(6)(C)(i), CREW has now effectively exhausted all applicable administrative remedies with respect to its request of DHS.

*The National Park Service FOIA*

28. By letter dated June 3, 2020, and submitted by email on that date, CREW made a FOIA request to the National Park Service seeking two categories of information. Specifically, CREW requested: (1) all documents or communications regarding President Donald Trump's

trip to St. John's Church on June 1, 2020; and (2) all documents related to the policies of the United States Park Police governing the treatment of peaceful protesters.

29. CREW sought a waiver of fees associated with processing its request. In support of its request for a fee waiver CREW explained that the requested records will help clarify the chain of events and whether law enforcement officials, including Park Police officers, were ordered to violently disperse Americans exercising their First Amendment rights for the President's publicity purposes. The records will also shed light on the Park Police's policies for engaging with peaceful protesters and whether the actions in Lafayette Park are consistent with those policies.

30. By email dated June 3, 2020, the National Park Service advised CREW that its FOIA request had been routed to the U.S. Park Police for processing and response to CREW. In a subsequent email sent on June 12, 2020, the National Park Service advised CREW its request had been placed in the complex track in accordance with Interior regulations, 43 C.F.R. 2.15.

31. To date, plaintiff CREW has received no further response from the National Park Service.

32. Under 5 U.S.C. § 552(a)(6)(C)(i), CREW has now effectively exhausted all applicable administrative remedies with respect to its request of Interior.

## PLAINTIFF'S CLAIM FOR RELIEF

33. Plaintiff repeats and re-alleges paragraphs 1-32.

34. Plaintiff properly asked for records within the custody and control of the U.S. Department of Homeland Security and the U.S. Department of the Interior.

35. Defendants DHS and Interior wrongfully withheld agency records requested by plaintiff by failing to comply with the statutory time limit for making a determination on

plaintiff's requests, and by withholding from disclosure records responsive to plaintiff's requests.

36.  Plaintiff CREW is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in its June 3, 2020 FOIA requests to DHS and Interior.

## Requested Relief

WHEREFORE, plaintiff respectfully requests that this Court:

(1)  Order defendants to immediately and fully process plaintiff's June 3, 2020 FOIA requests to the U.S. Department of Homeland Security and the U.S. Department of the Interior and to disclose all non-exempt documents immediately to plaintiff;

(2)  Issue a declaration that plaintiff is entitled to immediate processing and disclosure of the requested records;

(3)  Provide for expeditious proceedings in this action;

(4)  Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5)  Award plaintiff its costs and reasonable attorneys' fees in this action; and

(6)  Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

 /s/ Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Weismann.anne@gmail.com

Adam J. Rappaport
(D.C. Bar No. 479866)
Citizens for Responsibility and Ethics

10

                                                        in Washington
                                      1101 K Street, N.W., Suite 201
                                          Washington, D.C.  20005
                                            Phone: (202) 408-5565
                                        Facsimile: (202) 588-5020

Dated: February 24, 2021                *Attorneys for Plaintiff*